NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

14-P-1675                                          Appeals Court


COMMONWEALTH  vs.  JOHN V. CARVALHO.


No. 14-P-1675.

Bristol.      October 6, 2015. - January 13, 2016.

Present:  Berry, Green, & Blake, JJ.


Intimidation of Witness.  Harassment Prevention.  Jury and
    Jurors.  Practice, Criminal, Challenge to jurors, Voir
    dire.



    Complaints received and sworn to in the Fall River Division
of the District Court Department on July 1, 2010, and March 30,
2011.

    After transfer to the New Bedford Division of the District
Court Department, the cases were tried before Robert A. Welsh,
III, J.


    Dana Alan Curhan for the defendant.
    Corey T. Mastin, Assistant District Attorney, for the
Commonwealth.


    BERRY, J.  Following a District Court jury trial, the

defendant was convicted on two counts of intimidation of a

witness, G. L. c. 268, § 13B, and one count of violation of a

harassment prevention order, G. L. c. 258E, § 9.  In this

appeal, the defendant contends that the trial judge erred (1) in denying the defendant's peremptory challenge of one prospective juror who was the only minority seated on the petit jury; and (2) in refusing to pose a specific question to prospective jurors as to their experience with restraining and harassment prevention orders. The defendant also argues that the evidence at trial was insufficient to support the guilty verdicts on the two counts of witness intimidation against him. We affirm.

1. Background. The jury could have found that the defendant and the victim, who rented an apartment from the defendant, had a series of hostile encounters that culminated in the victim obtaining a harassment prevention order against the defendant.[1] Following the issuance of that order, the defendant confronted the victim and made comments to her about dropping it. The defendant was charged with intimidating a witness and violating the harassment prevention order, and, as mentioned, he was found guilty by a jury in the District Court.[2]

2. Jury issues. We address two jury-related challenges posed by the defendant: the peremptory challenge and the denial

---

[1] The original encounter occurred after the defendant's son broke into the victim's locked storage unit in the basement of the apartment building. The defendant's son was arrested in front of the apartment building and, at that point, the defendant made various comments to the victim.

[2] The defendant was found not guilty of additional counts of violating a harassment prevention order and intimidating a witness.

of a special question regarding experience with restraining and harassment prevention orders.

a. Peremptory challenge. During jury empanelment, defense counsel exercised a peremptory challenge against juror no. 1, who was the only minority juror seated.[3] The prosecutor noted for the record (but did not lodge a formal objection) that juror no. 1 was "the only minority juror." The prosecutor's comment prompted the trial judge to inquire of defense counsel concerning the reason for exercising the peremptory challenge. The judge stated he was considering the matter as one involving Commonwealth v. Soares, 377 Mass. 461, 488, cert. denied, 444 U.S. 881 (1979). In response to the judge's comment, defense counsel said only that "[m]y client decided to challenge her." The judge responded that "under the case law you have to make a better showing than that." Defense counsel then added, "Just looking at her [the juror's] experience, I don't feel that she would be a person that would be fair and equitable to my client, Your Honor," but "I really don't need any reason." The judge responded, "Well, you absolutely have to make a showing other than I don't think the juror would be fair." Finding that defense counsel had failed to make any such showing, the judge

---

[3] The record is silent concerning the specific race or ethnicity of the "minority juror."

struck the peremptory challenge, and instructed that juror no. 1 be reseated.

While a reviewing court "presume[s] that peremptory challenges are properly made, . . . this presumption can be rebutted by a prima facie showing."  Commonwealth v. Prunty, 462 Mass. 295, 306 (2012).  That prima facie showing has two parts: "first, a pattern, which in some circumstances may be a pattern of one; and second, a likelihood of group exclusion, which in some circumstances can be discerned solely from the strength of the pattern" (emphasis added).  Commonwealth v. Issa, 466 Mass. 1, 8 (2013).  "If the judge finds that a prima facie case of impropriety has been made, the burden shifts to the challenging party, who 'must provide, if possible, a neutral explanation establishing that the challenge is unrelated to the prospective juror's group affiliation.'"  Prunty, supra, quoting from Commonwealth v. Harris, 409 Mass. 461, 464 (1991).  "In assessing proffered rationales for a juror's exclusion, 'we rely on the good judgment of the trial courts to distinguish bona fide reasons for such [challenges] from sham excuses belatedly contrived to avoid admitting facts of group discrimination.'" Prunty, supra, quoting from Soares, supra at 491.

In large measure, this case follows very closely the protocol and precedent set out in Prunty and Issa, both of which control.  "[A] single peremptory challenge may be sufficient to

rebut the presumption, especially where 'the challenged juror is the only member of his or her protected class in the entire venire.'" Issa, supra at 9, quoting from Prunty, supra at 306 n.15. "[U]nless the judge is permitted to treat the early use of challenges in such circumstances as establishing a pattern, the venire may be substantially depleted of members of a group before a pattern can be identified by palpable evidence of improper exclusion. . . . [A] judge has broad discretion to require an explanation without having to make the determination that a pattern of improper exclusion exists." Commonwealth v. Garrey, 436 Mass. 422, 429 (2002). In this case, the defendant was challenging the "only minority juror." Thus, in these circumstances, the judge could have found "a pattern of one." Issa, supra at 8.

The defendant also contends that because the defendant and victim were of the same race, race was not "at issue" in the case, and thus the peremptory challenge was not subject to question. While cross-racial issues at trial may be an indicator of a likely intent or motive to exclude members of a particular group, see, e.g., Commonwealth v. Roche, 44 Mass. App. Ct. 372, 377-378 (1998), a cross-racial trial setting is by no means required in order to rebut the presumption of propriety. See Commonwealth v. Benoit, 452 Mass. 212, 225 (2008). "Among the factors that may be considered are the

'numbers and percentage of group members excluded,' and whether the challenged jurors are members of the same constitutionally protected group as the defendant or the victim."  Issa, supra at 9, quoting from Garrey, supra at 428.  See Garrey, supra at 429 n.2 ("The fact that the defendant, the victim, and the witnesses were Caucasian was not dispositive of the issue, because the defendant is entitled to a jury selected by nondiscriminatory criteria, and prospective jurors are entitled to a discrimination-free jury selection process").

The burden of establishing a prima facie showing that a peremptory challenge is improper "ought not be a terribly weighty one."  Commonwealth v. Maldonado, 439 Mass. 460, 463 n.4 (2003).  "A trial judge is in the best position to decide if a peremptory challenge appears improper and requires an explanation by the party exercising it.  Therefore, we do not substitute our judgment [on whether the presumption has been rebutted] for [the trial judge's] if there is support for it on the record."  Commonwealth v. Aspen, 53 Mass. App. Ct. 259, 262 (2001) (quotations omitted).  To hold otherwise would be to unduly restrict the trial judge's discretion to "[e]nsur[e] [the] nondiscriminatory use of peremptory challenges [and the] 'intended . . . benefit[s to] both sides in a criminal trial, and to protect the right of each person to have the opportunity to serve on a jury without fear of exclusion due to invidious

[race]-based discrimination.'" Prunty, supra at 308, quoting from Commonwealth v. Fruchtman, 418 Mass. 8, 17, cert. denied, 513 U.S. 951 (1994). Here, due to defense counsel's exercise of his first peremptory challenge on the only minority juror seated and the prosecutor's raising of the issue, the judge was within his discretion to find that a prima facie showing of impropriety was made and thus require an explanation from defense counsel.

As to the contention that defense counsel's explanation for exercising the peremptory challenge was sufficient, we are unpersuaded. In response to the judge's inquiry, defense counsel explained that "[j]ust looking at her experience, I don't feel that she would be a person that would be fair and equitable to my client, Your Honor." Such a generic description falls below the type of "bona fide" explanation that "must be both adequate (i.e., clear and reasonably specific, personal to the juror and not based on the juror's group affiliation) and genuine (i.e., in fact the reason for the exercise of the challenge)." Prunty, supra at 309 (quotations omitted). See, e.g., Commonwealth v. Rodriguez, 431 Mass. 804, 808-809 (2000) (after pattern of excluding female jurors was established, defendant's subsequent attempt to challenge another female juror was invalid because "not lik[ing] her looks" was insufficient gender-neutral reason for peremptory challenge).

b.  Special question in voir dire of the jury venire.
Defense counsel requested that the judge ask the following
question of potential jurors:  "Have you or any family member or
a friend requested a No Harassment Order or a [G. L. c.] 209A
restraining order against another person or had a No Harassment
Order or a [G. L. c.] 209A restraining order taken out against
you, a family member or a friend?"  The judge declined and noted
defense counsel's objection.

First, we note that the information that the defendant
sought to obtain through his proposed question was largely
captured by the confidential juror questionnaire utilized in
this case.[4]  See G. L. c. 234A, § 22.  The trial transcript also
makes clear that the judge and counsel were aware of the jury
questionnaires and the answers contained therein, as they served
as the basis for individualized questioning of prospective
jurors.  "The defendant has not indicated, nor does the record
suggest, that any of the jurors selected were not fair and
impartial."  Commonwealth v. Reavis, 465 Mass. 875, 890 (2013).

Beyond the statutorily required questions, see G. L.
c. 234, § 28, and limited special circumstances identified in
such cases as Commonwealth v. Sanders, 383 Mass. 637, 640-641

---

[4] Part 3 of the confidential juror questionnaire (2007)
asks, "Have you or anyone in your household or family ever had
any of the following experiences with the law . . . Been served
with a court order . . . [or] Sought a court order (restraining
order, stay-away order, injunction, etc.)?"

(1981) (interracial rape); Commonwealth v. Flebotte, 417 Mass. 348, 355 (1994) (sexual offenses against minors); Commonwealth v. Seguin, 421 Mass. 243, 245-249 (1995) (insanity defense), a trial judge retains broad discretion in determining how a jury will be selected and which questions will be posed to members of the venire. Reavis, supra at 887-888. "[A] determination by the judge that a jury are impartial will not be overturned on appeal in the absence of a clear showing of abuse of discretion or that the finding was clearly erroneous." Commonwealth v. Lopes, 440 Mass. 731, 736 (2004). In this case, the judge's decision to forgo asking the jury venire a question specific to their experiences with harassment prevention or restraining orders was neither error nor an abuse of discretion.

3. Sufficiency of evidence. The defendant argues that the evidence at trial was insufficient to support his convictions on two counts of witness intimidation because the statements underlying each count could not be construed as either express or implied threats. This claim is unavailing.

This court applies the Commonwealth v. Latimore, 378 Mass. 671, 677 (1979), standard and considers the evidence in the light most favorable to the Commonwealth to determine whether any rational jury could have found the essential elements of the crime of witness intimidation beyond a reasonable doubt.

In order to prove the defendant guilty of intimidation of a witness in violation of G. L. c. 268, § 13B, the Commonwealth was required to show that the defendant, either directly or indirectly, made a wilful effort to intimidate or harass another person who was a witness or potential witness at any stage of a criminal investigation or proceeding. See Hrycenko v. Commonwealth, 459 Mass. 503, 507 (2011).

As to the first count of witness intimidation, the victim testified as follows:

> "After the cruiser took [the defendant's son], [the defendant] had told me, do you feel good about letting him spend time with his kids over the weekend? Do you feel good about yourself? I better clear up this mess. He's going to make my life miserable. He's gonna make me lose my job."

The defendant's position that these statements were not expressions of an implied threat ignores that "[w]ords do not need to be expressly intimidating, threatening, or harassing" in order to fall within the meaning of intimidation. Hrycenko, supra at 511. "The assessment whether the defendant made a threat is not confined to a technical analysis of the precise words uttered[;] . . . the jury may consider the context in which the allegedly threatening statement was made and all of the surrounding circumstances." Commonwealth v. Pagels, 69 Mass. App. Ct. 607, 613 (2007), quoting from Commonwealth v.

Sholley, 432 Mass. 721, 725 (2000), cert. denied, 532 U.S. 980 (2001).

A reasonable jury could interpret the defendant's comments as threatening the victim in her personal or professional life. The defendant argues that the most reasonable interpretation of the victim's testimony was that the defendant's son would make the defendant's life miserable and cause the defendant to lose his job. But, when "the evidence lends itself to several conflicting interpretations, it is the province of the jury to resolve the discrepancy and determine where the truth lies." Commonwealth v. Platt, 440 Mass. 396, 401 (2003) (quotation omitted). Significantly, the victim testified that she understood the defendant's statements to be a threat, and she responded to those threats by applying for and obtaining a harassment prevention order against the defendant. We find no reason to disturb the jury's evaluation of the evidence.

Similarly, sufficient evidence was presented at trial to support the jury's verdict on the second count of witness intimidation, which occurred at the Fall River District Courthouse. The victim testified that "[i]n the hallway [of the courthouse, the defendant] had told me that I had to drop the no contact order sometime," and that the defendant "[was] just staring me down . . . he was there just staring at me, it's uncomfortable. It's intimidating." The defendant's statements

to the victim, combined with his "staring [her] down" during the court proceeding, had the effect of intimidating the victim. Furthermore, the defendant's actions all occurred while the victim was attending a court proceeding arising from criminal charges against the defendant's son for a property crime of which she was the victim. When considering "[t]he place, time, and circumstances" of the defendant's actions, see Commonwealth v. McCreary, 45 Mass. App. Ct. 797, 800-801 (1998), we conclude that "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Latimore, supra at 677 (quotation omitted).

Judgments affirmed.