The defendant, Jose Rosario, appeals from his convictions by a Superior Court jury of child rape, G. L. c. 265, § 23 ; indecent assault and battery on a child under fourteen, G. L. c. 265, § 13B ; disseminating matter harmful to a minor, G. L. c. 272, § 28 ; and witness intimidation, G. L. c. 268, § 13B. We affirm.
1. Background. The defendant was the boy friend of the victim's mother. Their romantic relationship began in 2011, when the victim lived with her mother and two siblings in Brockton. At that time, the victim was six years old, her sister was eight years old, and her brother was four years old. The defendant did not live with the family but often stayed with them for one or two weeks at a time in the three different apartments they lived in from 2011 through 2015.
At the family's first apartment, the defendant touched the victim's genitals and made her touch his penis on multiple occasions. He also told the victim not to tell her mother or "anyone" or she would get in trouble. At their second apartment, the defendant similarly touched the victim and also digitally penetrated her. At the third apartment, he made her watch a video of "naked people in a tattoo shop" "kissing each other's privates," and then forced her to touch his penis under a blanket -- hurting her arm until she did so. He also made her look at pornographic material and made her upload pornography onto her iPod. At one point, the defendant pulled down his pants and exposed his penis to her.
In December of 2014, the defendant and the victim's mother ended their romantic relationship, but the defendant continued to spend time at the family's apartment. On April 24, 2015, the victim's mother saw pornographic images on the victim's iPod. She asked the victim where the pictures came from, and the victim said the defendant made her put them there. Her mother called the police, and the defendant was arrested.
The defendant's trial in the Superior Court turned on the credibility of the victim, who was eleven years old at the time. The jury returned verdicts against the defendant on one count of child rape, five counts of indecent assault and battery on a child under fourteen, one count of disseminating matter harmful to a minor, and one count of witness intimidation. This appeal followed.
2. Child witness instruction. Whether "the jury should receive a special instruction with respect to the credibility of a young witness" is within the discretion of the trial judge. Commonwealth v. Krepon, 32 Mass. App. Ct. 945, 947-948 (1992), quoting from Commonwealth v. Avery, 14 Mass. App. Ct. 137, 141 (1982). Here, a special instruction was not necessary because "the judge's general instructions regarding the jury's role in weighing credibility of the witnesses fairly alerted the jury to the appropriate factors to consider." Id. at 948, citing Commonwealth v. A Juvenile, 21 Mass. App. Ct. 121, 124 (1985).
The judge instructed the jury, "You and you alone are the sole judges of the credibility or believability of each witness," and advised the jury to consider several relevant factors -- including their common sense -- in making that determination. See Commonwealth v. Figueroa, 413 Mass. 193, 197 (1992) (properly instructing jury they were "sole assessors of credibility" and to consider other relevant factors in weighing testimony of all witnesses). Accord Avery, 14 Mass. App. Ct. at 144 ("charge placed adequate emphasis on the objective factors by which the jury should determine the veracity of witnesses in general"). We presume the jury recognized that the victim was an eleven year old girl and assessed her testimony accordingly and as instructed by the judge. See Krepon, 32 Mass. App. Ct. at 948. See also Avery, supra (jury were "aware that their principal task was to determine the credibility of the victim's testimony"). Defense counsel extensively explored inconsistencies in the victim's testimony on cross-examination and made them apparent to the jury in closing argument. See Krepon, supra at 947 ("[I]nconsistencies in the victim's testimony were brought out by defense counsel on cross-examination and must have been apparent to the jury"). Accord A Juvenile, 21 Mass. App. Ct. at 125 (because "witness credibility was highlighted and vigorously explored throughout the trial," no special instruction on child witness was necessary). The judge, in short, acted within his discretion in denying the instruction requested by the defendant. See Commonwealth v. Perkins, 39 Mass. App. Ct. 577, 580 (1995) (judge's "refusal to include the specific language requested by the defendant did not amount to an abuse of discretion").
3. Witness intimidation. Viewed in the light most favorable to the Commonwealth, see Commonwealth v. Rosario, 83 Mass. App. Ct. 640, 642 (2013), "the evidence and reasonable inferences drawn therefrom were sufficient to establish that the defendant acted ... with the requisite intent for witness intimidation" under G. L. c. 268, § 13B. See id. at 643. The victim testified that, after the defendant made her touch his penis, he told her to "not tell my mom or anyone 'cause then my mom would ground me for a year and take all my toys away." The victim further stated she did not report the abuse to any adult because "then they would probably tell my mom and then I can get in big trouble." Given the obvious consequences the defendant faced if discovered, the jury were well justified in inferring that the defendant's instruction to the victim to not report the abuse to "anyone" was motivated by a desire to avoid criminal investigation. See ibid. (intent may be proved from circumstances). Accord Commonwealth v. Carvalho, 88 Mass. App. Ct. 840, 846 (2016), quoting from Commonwealth v. Pagels, 69 Mass. App. Ct. 607, 613 (2007) ("the jury may consider the context in which the allegedly threatening statement was made and all of the surrounding circumstances").
It is of no import that the defendant told the victim not to tell her mother or "anyone," and did not specify the police or other law enforcement. The statute "does not require that a defendant specifically articulate a threat not to speak to the police or other criminal investigator." Commonwealth v. King, 69 Mass. App. Ct. 113, 120 (2007). Nonetheless, the threat had that effect; the victim said she did not tell her mother because "then my mom would call the police." Even as a child the victim understood disclosure to her mother would result in police intervention. The jury could infer the defendant knew the same and intended his threats to prevent a criminal investigation from being initiated. See id. at 121 ("A criminal investigation need not have commenced"). Cf. Rosario, 83 Mass. App. Ct. at 644 (jury could infer defendant expected victim to testify in prospective court proceedings). The evidence was sufficient, and the defendant's motion for a required finding of not guilty was properly denied.
4. Closing argument. In closing argument, the prosecutor erred by suggesting that the victim should be believed simply because she came and testified. See Commonwealth v. Olmande, 84 Mass. App. Ct. 231, 234 (2013), citing Commonwealth v. Ramos, 73 Mass. App. Ct. 824, 826 (2009). There was no objection and, "considering the remarks in the context of the entire argument, the trial testimony, and the judge's instructions to the jury," Commonwealth v. Beaudry, 445 Mass. 577, 584 (2005), the error did not create "a substantial risk of a miscarriage of justice." See Olmande, supra at 235.
Although the victim's credibility was the heart of the case, the prosecutor's single improper remark was a brief portion of a closing argument that was otherwise properly based on the evidence. Accordingly, the error was unlikely to materially influence the jury. Cf. Beaudry, 445 Mass. at 588 (statement was meaningless "particularly when measured against the standard of a substantial risk of a miscarriage of justice"). The lack of prejudice is especially apparent given that it went unnoticed and unobjected to by defense counsel. See Commonwealth v. Correia, 65 Mass. App. Ct. 27, 36 n.7 (2005). Furthermore, the judge reminded the jury that the attorneys' opening and closing arguments were not evidence and repeatedly instructed that they alone could determine the credibility of the victim. We presume the jury followed those instructions. See Olmande, 84 Mass. App. Ct. at 237. In light of the foregoing, no substantial risk of a miscarriage of justice resulted from the prosecutor's improper remark.
Judgments affirmed.